261 F.2d 527
 BOARD OF EDUCATION OF ST. MARY'S COUNTY and G. Edward
Thomas, May Russell, Grace W. Knight, Robert E. Wigginton
and Clarence Leo Young, constituting the Board of Education
of St. Mary's County and Robert E. King, Jr., Superintendent
of Schools of St. Mary's County, Appellants,
v.
Joan Elaine GROVES, Minor, by her parent, William Groves, Appellee.
 No. 7755.
 United States Court of Appeals Fourth Circuit.
 Argued Oct. 6, 1958.
Decided Nov. 13, 1958.
 
 Robert R. Bair and H. Vernon Eney, Baltimore Md. (Venable, Baetjer & Howard, Baltimore, Md., on the brief), for appellants.
 Juanita Jackson Mitchell, Baltimore, Md. (Tucker Dearing, Baltimore, Md., and Jack Greenberg, New York City, on the brief), for appellee.
 Before SOBELOFF, Chief Judge, and SOPER and HAYNSWORTH, Circuit judges.
 PER CURIAM.
 
 
 1
 This is an appeal from a decree of the District Court which directed the Board of Education of St. Mary's County, Maryland, to permit one Negro child, Joan Elaine Groves, to attend Great Mills High School which was maintained for white children in that county. The same decree dismissed as moot an application on behalf of Thomas Conrad Groves, the brother of Joan, to be permitted to attend the same high school because the Board, a few days before the institution of the suit, had opened the seventh, eighth and ninth grades of the school to Negroes. The suit had been instituted on April 11, 1958, by William Groves, the father of the minor children, to secure the admission of his daughter to the eleventh grade and of his son to the ninth grade of the high school. He was dissatisfied with the services rendered to his children at the Jarboesville school, a consolidated elementary and junior-senior high school for Negroes, which his children had previously attended under the existing rules of the Board.
 
 
 2
 The suit was brought as part of the effort of certain Negro citizens in St. Mary's County to secure admission to the public schools of the county on an integrated basis. The history of this activity is set out in the opinion of Judge Thomsen in Robinson v. Board of Education of St. Mary's County, D.C.Md., 143 F.Supp. 481, which was instituted on March 16, 1956, and in the opinion in the pending case which was filed August 28, 1958, 164 F.Supp. 621. From these opinions it appears that on June 20, 1955, after the decisions of the Supreme Court in Brown v. Board of Education, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 and 349 U.S. 294, 75 S.Ct. 753, 99 L.Ed. 1083, the County Board of Education and the County Commissioners appointed a Citizens Committee to advise the school authorities in the formulation of a plan to abolish racial discrimination in the public schools of the county. After a conscientious study of the problem during the ensuing year the Committee made a final report on June 11, 1956, in which it recommended a plan for permitting integration in the elementary public schools on a voluntary basis beginning September, 1957. This plan was accepted by the Board of Education on July 31, 1956, in a resolution which declared that integration would begin with the 1957 school year in the elementary grades where administratively feasible.
 
 
 3
 In September 1956, thirty-one Negro children applied for admission to white public schools but their applications were denied. No appeals from this action were taken. During the year 1957, applications were made on behalf of four Negro children to be transferred to elementary grades in white schools, and on behalf of three Negro children, including the Groves children, to be transferred to high school grades. The requests for transfer to the elementary grades were granted but those for transfer to high school grades were denied. However, none of the four children whose requests were granted entered the white schools and an appeal by the father of the Groves children to the State Board of Education was denied. The appeal to the State Board was not filed within the time fixed by the statute and was accordingly dismissed, but the Board stated that if the appeal had been seasonably taken it would have been dismissed because the school authorities were acting in good faith pursuant to the policy promulgated by them, and because the question of whether the policy contravenes the constitutional right of the children in denying admission to the high school was a legal question not within the powers of the State Board to decide.
 
 
 4
 Finally, on April 11, 1958, the pending action on behalf of the Groves children was instituted and, as we have seen, Thomas Conrad Groves was admitted to the ninth grade of the white high school, in accordance with the plan adopted by the School Board, and the admission of Joan Elaine Groves to the eleventh grade of the high school was ordered by the District Judge against the opposition of the Board of Education. The Board opposed the admission of Joan Elaine Groves because in the course of its gradual integration of the schools in the county it had not reached the point at which it thought it wise to open the tenth, eleventh and twelfth grades of the white high school to Negro students. At the same time the Board announced that it would probably extend the plan of integration to include the tenth, eleventh and twelfth grades of the high school at the school session to begin in September, 1959.
 
 
 5
 Taking all of these facts into consideration the District Judge said:
 
 
 6
 'This court held in the Robinson case, 143 F.Supp. at page 492, that St. Mary's County had made a prompt and reasonable start toward compliance with the Supreme Court's ruling. The plan of desegregation which it has adopted appears to proceed with more than 'deliberate' speed. But such a plan cannot be considered in the abstract, apart from the particular facts of each case. A delay which might be necessary to permit the solution of administrative problems created by the transfer of a considerable number of students is not justified in this case where only two Negro students are applying for admission to a white school, where one has been accepted into a grade which has already been desegregated, and it is hoped to desegregate the remaining grades next year. The order of the State Board, read in connection with the opinion in the Robinson case, indicates that the State Board found no administrative problem justifying the denial of the applications filed on behalf of the two Groves children. The State Board evidently regarded the case as raising only a legal question of constitutional rights.
 
 
 7
 'The second opinion of the Supreme Court in the Brown case, 349 U.S. at pages 300, 301, 75 S.Ct. (753), at page 756, requires district courts to weigh the equities and to adjust and reconcile public and private needs. I do not question the godod faith of the defendants in adopting the plan of desegregation nor their sincere belief that a further delay in the complete desegregation of the high schools is desirable. But constitutional rights are personal, and if Joan Elaine Groves does not receive a desegregated education at this time, she never will. Her rights and he needs cannot properly be postponed simply because to County Board and certain members of the community think it would be wiser to delay desegregation of the three highest grades. Without disapproving the overall plan, and without prejudice to defendants' right to offer the plan as a defense if additional applications are filed, I conclude that defendants have not shown any legally sufficient justification for denying to the infant plaintiff, Joan Elaine Groves, the constitutional right for which she has applied.' (164 F.Supp. 625.)
 
 
 8
 It is contended that the order of the court constitutes an unjustified interference with the orderly plan of desegregation of the public schools adopted in good faith by the School Board of St. Mary's County. It is pointed out that the Supreme Court in the second Brown case, 349 U.S. 294, 299, 75 S.Ct. 753, held that school authorities have the primary responsibility of solving the problems caused by the integration of schools theretofore conducted on a segregated basis and that the courts must consider whether the action of the school authorities constitutes good faith implementation of the governing constitutional principles; and that if a reasonable start to this end is made in good faith and carried on with deliberate speed, additional time may be allowed to complete the change when it becomes necessary in accommodating the constitutional rights of the individual students with the protection of public interests. With these considerations in mind it is argued that if an exception to a reasonable plan in the case of a single child is allowed to stand, it will open the way to thwart the gradual integration of the public schools in every community where the number of Negroes seeking admission is small. In short, the contention is that the courts have no discretion to make exceptions to a plan formulated by the school authorities in good faith.
 
 
 9
 We are unable to accept this argument. Undoubtedly the District Judge should not take the formulation of a plan for the integration of the schools out of the hands of the school authorities but, on the other hand, he may not disregard his own responsibility to determine not only whether a plan is offered in good faith but whether it is reasonable in all its aspects; and this includes the duty to determine whether an exception to the plan in a given case should be made. Not infrequently such a decision must be made in every field of human activity whenever a reasoned plan bears with unusual hardship on a particular individual. We are unable to say that the District Judge, whose opinions in the St. Mary's County cases indicate that he has given meticulous study to the local situation, was wrong in this instance. We stress the passage in the concluding part of his opinion in the pending case where he expresses no disapproval of the general plan and reserves to the School Board the right to offer its plan as a defense if additional applications in conflict therewith are filed.
 
 
 10
 His decision in this case is quite similar to his decision in Moore v. Board of Education of Harford County, Maryland, D.C., 152 F.Supp. 114, affirmed by this court in Slade v. Board of Education, 252 F.2d 291, where he held that the School Board of the county was not generally estopped from modifying and narrowing an announced policy of integration but excepted from his order the case of two children who had been influenced by the first resolution not to press their individual rights.
 
 
 11
 It cannot be said to be arbitrary and unreasonable to admit Joan Elaine Groves to the twelfth grade of the Great Mills High School of St. Mary's County for her last year of public school education, in view of the fact that her brother has already been admitted to the ninth grade of the same school, and that the School Board now contemplates the integration of the tenth, eleventh and twelfth grades at the opening of the schools in the fall of 1959. It is conceded that no administrative difficulties have been caused by admission under the decision of the District Judge in this case.
 
 
 12
 Affirmed.